# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| Happy Times Discount Beverage, Inc., d/b/a Southern Spirits, ) ) ) Plaintiff, ) v. ) ) Buntin S. Podrebarac, ) ) Defendant. ) _____ ) | Civil Action No. 0:14-cv-00129-JMC  **ORDER AND OPINION** |

Plaintiff Happy Times Discount Beverage, Inc. ("Happy Times"), d/b/a Southern Spirits, filed this action seeking (1) a declaration from the court removing Defendant Buntin S. Podrebarac ("Defendant") from her corporate office as a result of specified misconduct, including Defendant's alleged breach of fiduciary duties as a shareholder and director of Happy Times, and (2) damages from Defendant for alleged breach of fiduciary duties. (ECF No. 1.)

This matter is before the court on Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1) motion") on the basis that the court lacks subject matter jurisdiction because the action is not ripe. (ECF No. 6.) In the alternative, Defendant moves the court to stay the action "pending final resolution of marital litigation between Defendant and Plaintiff [Happy Times]'s controlling shareholder [Don Podrebarac ("DP")] in North Carolina's state courts." (Id.) Happy Times opposes Defendant's Motion to Dismiss or Stay asserting that the court has subject matter jurisdiction over the case because Happy Times's claims against Defendant "are ripe, do not involve abstract disagreements, and are not dependent on future uncertainties." (ECF No. 7 at 1.) For the reasons set forth below, the court **DENIES** Defendant's Motion to Dismiss or Stay.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

DP and Defendant married on October 24, 1987 and divorced on May 5, 2009.  (ECF No. 1 at 2 ¶ 5.)  The most valuable asset in their marital estate was Happy Times, a discount alcohol retail store called "Southern Spirits" that was located in Lancaster County, South Carolina.[1]  (Id. at ¶ 6.)  During their marriage, DP and Defendant were Happy Times's only shareholders with each owning 50% of the company's stock.  (Id. at 2 ¶ 7.)  Also while married, DP and Defendant personally guaranteed a line of credit and a loan (together the "Corporate Debt") from Wachovia Bank, N.A. ("Wachovia"), to provide working capital for Happy Times and to refinance existing real estate debt.  (Id. at 2 ¶ 10–7 ¶ 25 (referencing ECF Nos. 1-3, 1-5, 1-7, 1-9).)

On April 29, 2009, Defendant and DP allegedly reached a mediated settlement agreement regarding the distribution of their marital property.  (Id. at 7 ¶ 27.)  Under the agreement, DP was to receive full ownership of Happy Times.  (Id.)  However, on May 24, 2011, Defendant advised DP that she did not believe that an enforceable settlement was reached involving the distribution of the marital property.  (Id. at 8 ¶ 29 (referencing ECF No. 7-7).)  Defendant further asserted that she never relinquished her interests in Happy Times and was still a 50% shareholder and director of the company. (Id. at ¶ 31.)

In the spring and summer of 2011, DP worked with Wells Fargo Bank, N.A.[2] ("Wells Fargo"), to extend the maturity of the Corporate Debt so that Happy Times would not default and cause the personal guaranties to become due.[3]  (ECF No. 1 at 8 ¶ 32.)  Defendant refused to cooperate with Wells Fargo and DP in this process and was unwilling to provide information

---

[1] Happy Times is a Subchapter S or statutory close corporation under South Carolina law.  (ECF No. 1 at 1 ¶ 1.)
[2] Wells Fargo had previously acquired Wachovia. (ECF No. 1 at 7 ¶ 26.)
[3] Based on their respective personal guaranties, Defendant was potentially personally liable for $1,821,346.19 and DP was potentially personally liable for $1,846,346.19, if Happy Times defaulted on the loans. (ECF No. 1 at 6 ¶ 24.)

requested by the bank.  (Id.)  Despite Defendant's lack of cooperation, DP successfully negotiated and obtained several agreements from Wells Fargo to extend the maturity date of the Corporate Debt for successive periods, with the last such extension set to expire on February 29, 2012.  (Id. at 9 ¶ 33.)

In the fall of 2011, DP filed a motion in the General Court of Justice for Union County, North Carolina to enforce the mediated settlement agreement.  (See ECF No. 7-10 at 3.)

In February of 2012, DP reached an agreement with Wells Fargo whereby the bank agreed to extend the maturity of the Corporate Debt under terms and conditions substantially similar to what Happy Times had previously been indebted. (ECF No. 1 at 9 ¶ 35.)  However, after receiving information from Defendant that "she continues to own one-half of all interests in . . . [Happy Times], and her consent is needed for any material transaction involving . . . [Happy Times]," Wells Fargo advised DP that both he and Defendant would be required to sign updated promissory notes, loan agreements, and guaranty agreements, but they would not have to increase the amounts of their personal guaranties or increase their respective personal financial exposure on the Corporate Debt.  (Id.; see also ECF No. 7-8 at 3.)  Despite numerous inquiries and requests from DP, Defendant refused to sign or execute an updated personal guaranty agreement necessary for Happy Times to extend the maturity of the Corporate Debt.  (Id. at 10 ¶ 37.)  Because of Defendant's refusal to sign or execute an updated personal guaranty agreement, Wells Fargo refused to extend the maturity of Happy Times's Corporate Debt past the February 29, 2012 maturity date.  (Id. at ¶ 40.)  Therefore, on February 29, 2012, Happy Times defaulted on its Corporate Debt by failing to pay amounts due. (Id. at 10 ¶¶ 41–43, 11 ¶¶ 44–45.)

On August 24, 2012, the General Court of Justice for Union County, North Carolina issued an order finding that DP could not enforce the provisions of the mediated settlement

agreement.[4]  (ECF No. 6-3 at 4–8.)

In 2013, Defendant finally expressed a willingness to sign and execute an updated personal guaranty to extend the maturity of Happy Times's Corporate Debt.  (Id. at 11 ¶ 47.)  However, by this time, Wells Fargo was no longer willing to extend the maturity of Happy Times's Corporate Debt under the previous terms and conditions of Happy Times's indebtedness.  In this regard, Wells Fargo allegedly required Happy Times to (1) agree to less favorable loan terms (including a higher interest rate); (2) agree to pay Wells Fargo for various costs and expenses it incurred because of the delay in extending the maturity of the Corporate Debt and signing the updated guaranty documents (including the bank's legal fees); and (3) agree to pay increased or additional loan fees, appraisal fees, bank fees, and other charges.  (Id. at 12 ¶ 48.)  On or about July 1, 2013, Wells Fargo extended the maturity of Happy Times's Corporate Debt and DP and Defendant signed updated personal guaranty agreements as part of the loan closing.  (Id. at ¶ 49.)

Alleging that Defendant's delay in agreeing to sign and execute an updated personal guaranty agreement caused it financial damage, Happy Times filed an action in this court on January 16, 2014, asserting a cause of action against Defendant for breach of fiduciary duties and seeking a declaration that she should be removed from corporate office based on her misconduct.  (ECF No. 1.)  On March 4, 2014, Defendant filed her Motion to Dismiss or Stay.  (ECF No. 6.)  Happy Times filed opposition to Defendant's Motion to Dismiss or Stay on March 20, 2014, to which Defendant filed a Reply in Support of the Motion to Dismiss or Stay on April 4, 2014.  (ECF Nos. 7, 10.)

---

[4] DP appealed this ruling, but his appeal was dismissed as interlocutory by the North Carolina Court of Appeals on February 14, 2014.  (ECF No. 7-10.)

## II. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) based on Happy Times' allegations that "there is complete diversity of citizenship between the Plaintiff [Happy Times] and Defendant, and the amount in controversy herein exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs." (See ECF No. 1 at 1 ¶ 3.)

## III. LEGAL STANDARD

A.    Motions to Dismiss under Fed. R. Civ. P. 12(b)(1)

A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." Pinkley, Inc. v. City of Fredrick, Md., 191 F.3d 394, 399 (4th Cir. 1999). Unless a matter involves an area of a federal court's exclusive jurisdiction, a plaintiff may bring suit in federal court only if the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331, or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states," 28 U.S.C. § 1332(a)(1). In determining whether jurisdiction exists, the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citation omitted).

B.     Ripeness

The court's exercise of its power of judicial review rests upon Article III of the Constitution and depends on the existence of a case or controversy.  See Preiser v. Newkirk, 422 U.S. 395, 401 (1975).  Ripeness is a "subset[ ] of Article III's command that the courts resolve disputes, rather than emit random advice."  Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir. 1991).  The court's role is "neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution."  Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000).

The purpose of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements."  Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580 (1985); see also Miller v. Brown, 462 F.3d 312, 318–19 (4th Cir. 2006).   A case is ripe for judicial decision where the issues are purely legal in nature, relate to an action which is final, and is not dependent on future uncertainties or contingencies.  Miller, 462 F.3d at 319.  In determining whether a case is ripe for review, the court must balance "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration."  Retail Indus. Leaders Ass'n v. Fielder, 475 F.3d 180, 188 (4th Cir. 2007).

Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all.  Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 200–201 (1983); see also Dames & Moore v. Regan, 453 U.S. 654, 689 (1981).  "Ripeness is, thus, a question of timing."  Smith v. United States, C/A No. 6:08-0203-CMC-WMC, 2008 WL 906699, at *3 (D.S.C. Apr. 1, 2008) (citing Stinson v. Sullivan, No. 1:07-cv-01311 LJO SMS HC, 2008 WL 115124, at *2 (E.D. Cal., Jan. 11, 2008) (internal citation

omitted)). "The burden of proving ripeness falls on the party bringing suit." Miller, 462 F.3d at 319.

## IV.     ANALYSIS

A.     The Parties' Arguments

   *1. Defendant*

In her Rule 12(b)(1) motion, Defendant argues that the court lacks subject matter jurisdiction because the case is not ripe for adjudication. (ECF No. 6-1 at 4.) Specifically, Defendant argues that the case will not be ripe until North Carolina's state courts determine whether Defendant retained an ownership or director's interest in Happy Times after DP and Defendant divorced. (Id.)

In the alternative to dismissing the case, Defendant argues that the court should stay the action stayed until North Carolina's state courts resolve the aforementioned issue. (Id. at 4–5.)

   *2. Happy Times*

Happy Times opposes Defendant's Rule 12(b)(1) motion arguing that its claims are ripe for review because a North Carolina state court has already held that DP and Defendant's marital settlement agreement was unenforceable, "which means that [Defendant] Buntin did not relinquish her interests in [Happy Times] and [Defendant] never ceased being a 50% shareholder and director of [Happy Times]." (ECF No. 7 at 8–9.) Happy Times further argues that the Colorado River abstention doctrine should not be used to stay or dismiss this case due to the existence of the domestic relations matter pending in North Carolina state court between Defendant and DP.[5] (Id. at 14–25 (citing Colorado River Conservation Dist. v. United States, 424 U.S. 800 (1976)).)

---

[5] Defendant acknowledged in her Reply that she "has not requested that this court decline to exercise jurisdiction over [Happy Times]'s claim under the abstention doctrine, . . . ." (ECF No. 10 at 5.)

### 3. The Court's Review

Defendant asserts that dismissal of this matter for unripeness is appropriate because the claims against her alleging breach of fiduciary duties and seeking a declaration of removal from corporate office cannot proceed until the state court of North Carolina adjudicates whether she is a 50% shareholder and director of Happy Times, which issue is still being contested by DP and Defendant. (ECF No. 6-1 at 4.) Happy Times opposes staying the action or dismissing its claims arguing that they are ripe because the mediated settlement agreement granting full ownership of Happy Times to DP was adjudicated to be unenforceable and Defendant has taken the position that "she is a 50% shareholder and a director of [Happy Times]." (ECF No. 7 at 8–9.)

Upon review, the court notes that in order for Happy Times's claims to be ripe for adjudication in this court, they must not be "anchored" to the ongoing litigation in North Carolina between Defendant and DP. In this regard, there is evidence in the record not tied to the litigation in North Carolina between Defendant and DP, which evidence allows the court to make an independent finding as to whether Defendant had a fiduciary relationship with Happy Times to allow this action to proceed on its claims regardless of what the decision of the North Carolina state courts is regarding Defendant's legal interest in Happy Times. Specifically, there is evidence in the record of Defendant's express representations to DP and third parties like Wells Fargo that she is a 50% owner and director of Happy Times and that "her consent is needed for any material transaction" involving Happy Times. (See, e.g., ECF Nos. 6-4 at 2 ¶ 8, 7-7 at 2, 7-8 at 3.) The court finds that Defendant's express representations manifest evidence of a fiduciary relationship between Defendant and Happy Times under South Carolina law

8

sufficient to allow Happy Times's claims to survive Defendant's Rule 12(b)(1) motion.[6]  See, e.g., Alderman v. Alderman, 181 S.E. 897, 908 (S.C. 1935) ("Officers and directors of a corporation occupy a fiduciary relation to the corporation . . . .").  Therefore, as a result of Defendant's express representations, the court is not required to dismiss or stay this action pending adjudication by a North Carolina state court of the litigation between Defendant and DP.  Accordingly, Defendant's Motion to Dismiss or Stay motion must be denied.

## V.     CONCLUSION

For the reasons set forth above, the court hereby **DENIES** Defendant Buntin S. Podrebarac's Motion to Dismiss or Stay.  (ECF No. 6.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

January 7, 2015
Columbia, South Carolina

---

[6] "A fiduciary relationship exists when one reposes special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence."  O'Shea v. Lesser, 416 S.E.2d 629, 631 (S.C. 1992).  "To establish the existence of a fiduciary relationship, the facts and circumstances must indicate the party reposing trust in another has some foundation for believing the one so entrusted will act not in his own behalf but in the interest of the party so reposing."  Moore v. Moore, 599 S.E.2d 467, 472 (S.C. Ct. App. 2004) (citations omitted).  "The evidence must show the entrusted party actually accepted or induced the confidence placed in him."  Id.  The existence of a fiduciary duty is a question of law for the court.  See Vortex Sports & Entm't, Inc. v. Ware, 662 S.E.2d 444, 450 (S.C. Ct. App. 2008) (citing Clearwater Trust v. Bunting, 626 S.E.2d 334, 337 (S.C. 2006)).